FILED & JUDGMENT ENTERED
Steven T. Salata

October 12 2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

J. Craig Whitley
United States Bankruptcy Judge

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **BK RACING, LLC,** | ) | Case No. 18-30241 |
| | ) | |
| Debtor. | ) | |
| **MATTHEW W. SMITH,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary Proceeding No.: 20-03008 |
| **LENA PITRELLI,** | ) | |
| | ) | |
| Defendant. | ) | |

**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
GRANTING JUDGMENT IN FAVOR OF THE DEFENDANT**

**THIS MATTER** came on for trial on Friday July 23, 2021. Andrew Houston and Caleb Brown appeared on behalf of Plaintiff Matthew W. Smith, and John Woodman and David DiMatteo appeared on behalf of the Defendant Lena Pitrelli. On July 12, 2021, Plaintiff filed

his *Trial Brief*, [Doc. No. 25], and Defendant filed her *Defendant's Pre-Trial Brief*. [Doc. No. 26]. On that same day, Defendant filed her *Declaration of Lena Pitrelli*, [Doc. No. 28], as well as the *Declaration of Ron Devine*. [Doc. No. 27]. Plaintiff did not submit a Declaration. On July 16, 2021, Plaintiff filed his *Objections to Declarations and Reply Brief*, [Doc. No. 29], and Defendant filed her *Defendant's Reply Brief*. [Doc. No. 30].

The Court, having considered the pleadings, the evidentiary record in this case, the Trial Order (defined below), matters for which the Court can take judicial notice, the parties' pre-trial submissions and briefs, Declarations, testimony of the witnesses from trial, and the arguments of counsel, finds and concludes as follows:

## PROCEDURAL HISTORY

On February 15, 2018, the Debtor, BK Racing, LLC, filed a voluntary petition for relief under chapter 11. On March 30, 2018, this Court granted *Union Bank & Trust's Motion to Appoint Chapter 11 Trustee* appointing the Plaintiff as the chapter 11 trustee. Pursuant to the Debtor's confirmed plan of liquidation, the Plaintiff was authorized to pursue litigation claims and avoidance actions for the benefit of the Debtor's creditors.

On February 10, 2020, the Plaintiff commenced this action seeking to avoid and recover a $30,000.00 payment that was made by the Debtor to the Defendant. Due to the amount in controversy and there being only one transfer alleged, the parties entered into a series of stipulations that are memorialized in this Court's *Order: (A) Resolving Motion to Determine the Sufficiency of the Defendant's Answers to Requests for Admission, (B) Approving the Parties Stipulations Regarding a Trial of this Action, (C) Scheduling a Trial on the Merits, and (D) Granting Related Relief* entered on June 30, 2021 (the "Trial Order"). [Doc. 24]. Among other things, the parties agreed to limit the trial to Plaintiff's preference count, stipulated to most of the

2

elements of the preference claim and agreed to a stipulated record from the admissions in the pleadings, as well as Defendant's discovery responses and undisputed facts.

The Trial Order therefore narrowed the remaining issues for the Court to resolve to the following two issues: (i) whether the Defendant was an insider such that the transfer made between ninety days and one year of the petition date could be avoided under sections 101(31) & 547(b)(4)(B) of the Bankruptcy Code; and (ii) whether the Defendant can establish a contemporaneous exchange defense pursuant to 11 U.S.C. § 547(c)(1)(A) and (B). The Court conducted a trial on these two issues on July 23, 2021.

## FINDINGS OF FACTS

The relevant facts to this matter are articulated in the Trial Order and include the following:

1. The Debtor was a North Carolina limited liability company, that owned and operated a NASCAR Cup Series racing team until 2018.

2. Ronald Devine was an officer and insider of the Debtor at the time of the Transfer (defined below).

3. John and Lena Pitrelli were friends and neighbors of Devine. John Pitrelli is an attorney who has occasionally performed legal work for Devine and or his companies.

4. On the afternoon of June 7, 2017, Devine telephoned Lena Pitrelli and asked if he could stop by her house on his way home from work. He said he wished to discuss a matter with her. Lena Pitrelli acceded, and the two met that evening in the Pitrelli's kitchen.

5. During that conversation, Devine told Lena Pitrelli that the Debtor would like to enter additional vehicles in the upcoming NASCAR Cup Series Race at Pocono-I. Devine explained racing more vehicles meant a better opportunity to win or place higher, which would likely result in more team winnings.

6. However, the Debtor had a cash flow problem. To place additional cars in the upcoming race, the Debtor would need to purchase tires and supplies. At the moment, it

3

lacked the money to do so. However, as Devine explained, the Debtor had certain race winnings coming to it from NASCAR from the prior week's race. Under customary NASCAR practice, these race winnings should "hit" (be wired into) the Debtor's bank account within the next 24 hours, although no one knew exactly when.

7. To address the timing problem, Devine asked Lena Pitrelli to make the Debtor a short term $30,000.00 loan. Devine would deposit her check into the Debtor's account and use it to make the necessary purchases. When the guaranteed NASCAR winnings were settled in the Debtor's bank account, he would then wire the money back into her account.

8. Lena Pitrelli was willing to help out. She wrote a check to the Debtor for $30,000.00. The check was drawn from a joint bank account belonging to Lena and her husband John Pitrelli. Notated on the memo line of the check was the word "Loan." A copy of the check was included as Exhibit 3 in the Trial Order.

9. Given the personal relationship and the Debtor's urgent need for the money, no promissory note or loan agreement was executed. No interest was charged; no security was provided. John Pitrelli was not involved in the transaction and was not aware of the loan.

10. On June 8, Devine deposited Lena Pitrelli's check into the Debtor's bank account. The check "cleared" (or, more accurately, was credited to the Debtor's account) and was used to purchase the tires and supplies that very day.

11. Meanwhile, the Debtor's anticipated NASCAR winnings were wired into the Debtor's account. On June 9, 2017, the Debtor repaid the loan in full by wiring the sum of $30,000 from its operating account into a joint bank account owned by Mr. and Mrs. Pitrelli (the "Transfer").

12. Effectively, Lena Pitrelli was a friend of Mr. Ronald Devine, who made a very short-term loan to the Debtor in order assist Devine.

13. By receiving the Transfer, Lena Pitrelli received repayment in full of the loan.

14. The Debtor complied with the parties' agreement as to when the loan should be

4

repaid and how the proceeds of the loan were to be used.

15. Lena Pitrelli did not engage in making loans as a regular and ordinary course of her business at the time of the Transfer.

## CONCLUSIONS OF LAW

1. On the question of whether the Defendant is a non-statutory insider for purposes of section 547(b)(4)(B), *Butler v. David Shaw, Inc.* is controlling precedent in the Fourth Circuit. 72 F.3d 437 (4th Cir. 1996).

2. The Bankruptcy Code's definition of "insider" is not exhaustive. *Id.* at 443. Rather, "[a]n insider may be any person or entity whose relationship with the debtor is sufficiently close so as to subject the relationship to careful scrutiny." *Id.* (internal citations omitted).

3. To meet this standard, "the alleged 'insider must exercise sufficient authority over the debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets.'" *Id.*

4. The Defendant never held significant control over the Debtor or over Mr. Devine. Nor did the Defendant exercise sufficient authority over the Debtor so as to unqualifiably dictate corporate policy and the disposition of corporate assets. Instead, she was a neighbor and friend of Devine, who in turn was an insider of the Debtor.

5. Accordingly, the Defendant was not an insider at the time of the transactions at issue under sections 101(31) & 547(b)(4)(B) of the Bankruptcy Code.[1]

---

[1] The Plaintiff relied on the unpublished opinion of the United States Court of Appeals for the Fourth Circuit in *Koch v. Rogers (In re Broumas)*, 1998 U.S. App. LEXIS 3070 (4th Cir. 1998), which appeared to endorse the more expansive approach of the Third, Ninth and Eleventh Circuits for determining non-statutory insider status as discussed in detail by the Honorable James C. Dever, III, Chief District Judge for The United States District Court for the Eastern District of North Carolina. *See*, *Lynch v. Winslow (In re Winslow)*, 473 B.R. 94, 104-05 (E.D.N.C. 2012). (discussing the tension between the Fourth Circuit's Butler and Broumas decisions and finding that the determination of insider status is not based on control "but rather includes the closeness of the relationship between the debtor and the alleged non-statutory insider as well as whether the transaction between the two was made at arm's length."). For the benefit of a reviewing Court, had this Court used the broader standard discussed in *Broumas* and *Lynch*, the Court might have

6. On the second issue, section 547(c)(1) of the Bankruptcy Code governs the Court's analysis of a contemporaneous exchange defense to a preference claim and provides:

> (c) The trustee may not avoid under this section a transfer—(1) to the extent that such transfer was—(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and (B) in fact a substantially contemporaneous exchange. 11 U.S.C. § 547(C)(1)(A)-(B).

7. The Defendant bears the burden of proof on her contemporaneous exchange defense. 11 U.S.C. § 547(g) ("the creditor or party in interest against whom recovery or avoidance is sought has the burden of proving the nonavoidability of a transfer under subsection (c) of this section.").

8. The repayment of a short-term loan is not intended to be a contemporaneous exchange for new value because "the satisfaction of an antecedent debt does not constitute 'new value' and such a transfer is not excepted as a preference under § 547(c)(1)." *Brown v. Leslie Kitchenmaster & Kot, Inc. (In re Hertzler Halstead Hosp.)*, 334 B.R. 276, 289 (Bankr. D. Kan. 2005); *Feltman v. City Nat'l Bank (In re Sophisticated Communs., Inc.)*, 369 B.R. 689, 703-04 (Bankr. S.D. Fla. 2007); *Sarachek v. Crown Heights House of Glatt, Inc. (In re Agriprocessors, Inc.)*, 521 B.R. 292, 311-12 (Bankr. N.D. Iowa 2014).

9. In this case, the Defendant failed to carry her burden of proof on her contemporaneous exchange defense because the evidence showed that the transaction was intended as a short-term loan.

---

determined the "insider" issue in favor of the Plaintiff because the transactions at issue were not arms' length transactions and the relationship was close enough to warrant careful scrutiny. However, this Court is obligated to follow the Fourth Circuit's published decision in *Butler*.

10. Accordingly, the evidence showed that the Transfer was not intended to be made in exchange for new value. Rather, the Transfer was made on account of an antecedent debt owed by the Debtor to the Defendant.

11. Based on the foregoing, the Court will enter a separate judgment in favor of the Defendant consistent with this order.

| *This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of this Order.* | *United States Bankruptcy Court* |
|---|---|